UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

    v.                                                                                        07-CR-193-A

VEDRAN ZAVISIC,

        Defendant.

_____

# REPLY MEMORANDUM IN FURTHER SUPPORT OF
# DEFENDANT'S MOTION TO DISMISS

PHILLIPS LYTLE LLP
Timothy W. Hoover
Spencer L. Durland
3400 HSBC Center
Buffalo, NY 14203-2887
Phone (716) 504-5754
Facsimile (716) 852-6100
thoover@phillipslytle.com
sdurland@phillipslytle.com
Counsel for Defendant Vedran Zavisic

**PRELIMINARY STATEMENT**

Defendant Vedran Zavisic's Opening Memorandum and affidavit established that all four of the factors set forth in *Barker v. Wingo*, 407 U.S. 514 (1972) weigh heavily against the Government, requiring dismissal of the charges against him. The Government's opposition, consisting of a memorandum and exhibits but no affidavit, fails to offer a convincing reason why even one of the *Barker* factors weighs in its favor. The Government's response only strengthens Defendant's argument that the Government's indefensible "pursuit" was wholly responsible for a delay that lasted over five years. For his part, Defendant timely asserted his right to a speedy trial and demonstrated particularized prejudice, which the Government ignored, and presumptive prejudice, which the Government conceded. Defendant's motion must therefore be granted.

**REPLY ARGUMENT**

Telegraphing the weakness of its legal position, the Government opens its argument by suggesting that the Court shrink from ordering a remedy as serious as dismissal. *See* Government's Response to Defendant's Motions (Docket #19) ("Gov. Mem.") at 8-9. Similar hand-wringing in *Doggett v. United States*, 505 U.S. 647 (1992) prompted the Supreme Court to respond that "[t]he Government . . . can hardly complain too loudly, for persistent neglect in concluding a criminal prosecution indicates an uncommonly feeble interest in bringing an accused to justice." *Id.* at 657. As discussed below, the Government's post-indictment investigation of Mr. Zavisic was nothing if not persistently neglectful. The continued vitality of dismissal as a remedy for such neglect, despite its undisputed severity, is a testament to the importance placed upon the right to a speedy trial. The *Barker* analysis was specifically designed to determine whether that remedy is required. Applying that analysis to this case, the Government has left this Court no choice but to dismiss.

## POINT I

## THE PERIOD OF DELAY RUNS FROM DEFENDANT'S ARREST TO FORMAL COMMENCEMENT OF EXTRADITION PROCEEDINGS, BUT EVEN THE 49- OR 54- MONTH DELAY THE GOVERNMENT SUGGESTS IS EXTRAORDINARY

For the reasons set forth in Defendant's Opening Memorandum (*see* Defendant's Motion to Dismiss for Violation of the Sixth Amendment Right to a Speedy Trial (Docket #15-0) ("Dft. Mem.") at 7-8), the delay at issue is 63 months. The Government offers no authority to support its position that the constitutional speedy trial clock stopped when it began the process of issuing an international arrest warrant ("red notice") (*see* Gov. Mem. at 10), much less any authority that emerged since this Court's recent holding that the period of delay ends upon the Government's formal commencement of extradition proceedings. *See United States v. Cheng*, No. 05-CR-71-A, 2013 WL 1704912, at *4 (W.D.N.Y. Jan. 9, 2013), *adopted by*, 2013 WL 1715443 (W.D.N.Y. Apr. 19, 2013).[1] Therefore, in no event is the delay less than 54 months.[2]

But this legal dispute is ultimately inconsequential. Even if the Government is correct that the delay at issue was 49 or 54 months, as it alternately suggests (*see* Gov. Mem. at 10-11), the outcome would not change. As the Government concedes (*see id.* at 11), either period of delay easily triggers the *Barker* analysis and raises a presumption of prejudice.

---

[1] The Government's reference to "instances of due diligence" (Gov. Mem. at 10) confuses the length of the delay with the reasons for the delay. The Government's claims to "due diligence" are discussed below. *See infra*, Point II.

[2] While there may be some debate whether the time between the Rule 48(b) dismissal and the August 2007 indictment (the "Indictment") does not count for speedy trial purposes, the Government's authority (*see* Gov. Mem. at 10) does not compel that conclusion. Neither *United States v. Elsbery*, 602 F.2d 1054, 1058 (2d Cir. 1979) nor *United States v. Marion*, 404 U.S. 307, 308-09 (1971) involved any pre-indictment charge or arrest. *United States v. MacDonald*, 456 U.S. 1 (1982), which addressed a delay between dismissal of a military proceeding and a later federal indictment (*see id.* at 3), held that "the Speedy Trial Clause has no application after the Government, acting in good faith, *formally drops charges*" (*see id.* at 7 (emphasis added)). Here, by contrast, the Court dismissed the criminal complaint.

### POINT II

### THE GOVERNMENT'S PAPERS REVEAL AN EGREGIOUSLY NEGLIGENT PURSUIT—AND UTTER FAILURE TO PURSUE—THAT WEIGHS HEAVILY IN FAVOR OF DISMISSAL

The second *Barker* factor requires that the Court scrutinize the conduct of the Government and of the defendant. *See Barker*, 407 U.S. at 531. The Government bears the burden of justifying the delay. *See United States v. New Buffalo Amusement Corp.*, 600 F.2d 368, 377 (2d Cir. 1979). Defendant's Opening Memorandum demonstrates—and the Government does not challenge—that Defendant lived, worked, and frequently travelled[3] openly, and maintained frequent contact with the Serbian and Canadian governments, apprising both of his location. *See* Dft. Mem. at 12-14. The Government's conduct, by contrast, was egregious. The facts disclosed in its papers reveal that the Government was not simply ineffective or inefficient; it was inert, and on two occasions consciously decided *not* to fulfill its constitutional obligation to bring the accused to trial. Such inexcusable negligence weighs heavily against the Government.

After arresting Defendant in October 2006, the Government did not timely pursue the matter, resulting in a Rule 48(b) dismissal. *See* Gov. Mem. at 4. In May 2007, the Government learned that Defendant had moved to Eastern Europe. *See id.* In August 2007, the Government made a handful of ministerial, internal notations reflecting Defendant's relocation[4] and returned

---

[3] Defendant frequently crossed manned border crossings in Europe, where his passport and identity were checked, including over a dozen crossings between 2007 and 2012 at the passport-controlled Roszke crossing between Serbia and Hungary, where he was apprehended in 2012.

[4] The titles of these internal agency documents include the word "fugitive," but that does not make Defendant a "fugitive" for Sixth Amendment purposes. Because of the implications it carries, that term has been carefully defined as a person who, "while abroad . . . learn[s] that they are under indictment and make[s] no effort to return to the United States to face charges." *United States v. Blanco*, 861 F.2d 773, 779 (2d Cir. 1988). Defendant lived, worked,

a sealed Indictment against him on August 14, 2007. *See id.* The Government admits that it did nothing for the next two years. *See id.* at 4-5.

The "action" the Government undertook in August 2009 condemns its investigation even more than the two years of idleness that preceded it. According to the Government's papers, although Canadian officials informed the Government that they had documents relevant to the Government's investigation of Mr. Zavisic, ICE "had not had access to them" (*id.* at 4-5)—plainly the Government's euphemism for "never requested them," or perhaps, "never took the steps necessary to get access to them." The Government's investigation then took another two-year hiatus, until September 2011, when it emailed the U.S. Embassy in Austria. *See id.* at 5. The Government does not explain why it contacted the U.S. Embassy in Austria for help locating a person it knew to be in Eastern Europe.

Around the same time, the Government also discussed looking for Defendant, but decided against it because it did not already know where he was.[5] *See id*. The circularity is hard to miss, as is the perverse incentive that would flow from a rule that self-imposed ignorance absolves Government investigators of their constitutional and professional duty to investigate. In lieu of searching for Defendant, the Government apparently decided to issue a red notice, and in preparation unsealed the Indictment in October 2011. *See id.*[6] Inexplicably, however, the Government did not file the red notice until February 10, 2012. *See id.* One week later—and over five years since his October 2006 arrest—Defendant was arrested at the Roszke border, a

---

and travelled openly (*see* Dft. Mem. at 12-14), and the Government concedes that Defendant had no knowledge of the Indictment (*see* Gov. Mem. at 16).

[5] The Government also notes that Defendant's last known address "was checked," but does not say by whom.

[6] The Government did not, however, notify Defendant's counsel.

border he had crossed months after the Government learned that he had joined his family in Eastern Europe, and one of the many European borders he often crossed between 2007 and 2012.

Still worse than the Government's decision to rely exclusively on a red notice rather than actively searching for Defendant was its failure to take even this insufficient[7] step until nearly *five years* after it learned that Mr. Zavisic had returned to Eastern Europe; had it done so, Mr. Zavisic would have been apprehended in December 2007 (he crossed the Roszke border that month) or earlier (at another border), rather than September 2012.  *See Cheng*, 2013 WL 1704912 at *6 (the same search that located the defendant in 2007 could have been run two years earlier).

The Government's attempt to excuse its failures by stating, without explanation, that Defendant obtained Serbian citizenship (*see* Gov. Mem. at 12) is a red herring, and is flawed in at least four respects.  First, Defendant did not become a Serbian citizen until 2009.  *See* Dft. Mem. at 4.  Second, because the Government did not know (since it did not investigate) that Defendant became a Serbian citizen, that fact cannot justify its negligence.  Third, there is no indication that the Government attempted to determine if Serbia would agree to extradite Defendant, though not required to do so.  Fourth, the Government's reference to Defendant's Serbian citizenship does not explain why it delayed filing the red notice, which would ensure Defendant's arrest if he crossed the Serbian border (as he often did).

Apparently recognizing the weakness of its claim to diligence, the Government concedes that it was negligent, arguing that the second factor should weigh in Defendant's favor, but not heavily.  *See* Gov. Mem. at 14.  While negligence does not weigh as heavily against the

---

[7] Merely entering a defendant's name into a database is not the diligence that the Sixth Amendment requires.  *See United States v. Mendoza*, 530 F.3d 758, 764 (9th Cir. 2008); *United States v. Leaver*, 358 F. Supp. 2d 255, 270-71 (S.D.N.Y. 2004).

Government as does intentional delay (*see Barker*, 407 U.S. at 531), the weight to be assigned to governmental negligence varies with its magnitude. In *United States v. Erenas-Luna*, 560 F.3d 772 (8th Cir. 2009), for example, the court of appeals agreed that the second *Barker* factor should weigh "decidedly against the government," "where the government readily admits that it 'dropped the ball,' let [the defendant]'s case 'slip through the cracks,' made no efforts to locate and arrest [the defendant] over a three-year period, and missed multiple opportunities to apprehend [the defendant] in a timely manner." *Id.* 777.

Here, the Government's negligence was even more pronounced. By its own account, the Government took no meaningful action to find Defendant and at one point ignored a lead offered by the Canadian government. Defendant, by contrast, lived, worked, and travelled openly, and maintained frequent contact with Serbian and Canadian authorities. *See* Dft. Mem. at 12-14. With even the smallest effort—calling the Serbian Embassy, for example, or filing a red notice promptly upon learning that Defendant had returned home—the Government would have apprehended Defendant years ago.

The Supreme Court has described *Barker*'s second factor as the "'flag all litigants seek to capture,'" since it frequently decides the outcome of a speedy trial motion. *United States v. Fernandes*, 618 F. Supp. 2d 62, 67 (D.D.C. 2009) (citing and quoting *United States v. Loud Hawk*, 474 U.S. 302, 315 (1986)). To capture the second *Barker* factor, the Government had to establish that it made a "serious effort" to bring Defendant to trial. *Doggett*, 505 U.S. at 652. The Government's search was not marked by "serious effort," or by any effort at all, and is especially culpable in light of Defendant's conduct, which gave the Government every opportunity to locate him. The second element therefore weighs heavily against the Government.

## POINT III

**UNDER *DOGGETT*, DEFENDANT TIMELY ASSERTED HIS SPEEDY TRIAL RIGHT; THE GOVERNMENT FAILS TO PERSUASIVELY ARGUE OTHERWISE**

In considering Defendant's "assertion of the right," *Doggett*, not *Barker*, is the most analogous Supreme Court case. In *Barker*, the defendant complained of post-arrest delay (*see Barker*, 407 U.S. at 534-36), whereas the defendant in *Doggett* complained of delay that accrued over years when he lived abroad, unaware of the indictment against him (*see Doggett*, 505 U.S. at 653). The *Doggett* Court paused on the "assertion of the right" factor just long enough to make the commonsense observation that a defendant unaware of the indictment cannot be penalized for failing to assert his speedy trial right until after his arrest. *See id.* at 653-54; *see also Cheng*, 2013 WL 1704912 at *2.

Critically, it is Defendant's knowledge of the *indictment* that the Government must prove (*see Doggett*, 505 U.S. at 653-54), not the substance of the Government's allegations or the existence of dismissed charges (*see* Gov. Mem. at 16). *See United States v. Washnuk*, No. 07-CR-174-A, at *7-8 (W.D.N.Y. May 14, 2013) (slip op.) (in recommending that the indictment be dismissed, concluding that knowledge of a dismissed criminal complaint was irrelevant to the third *Barker* factor). The "assertion of the right" factor weighs against the Government when a defendant who the Government cannot establish was aware of the indictment asserts his speedy trial right after his arrest. *See United States v. Leaver*, 358 F. Supp. 2d 255, 272 (S.D.N.Y. 2004); *United States v. Brown*, 169 F.3d 344, 350 (6th Cir. 1999); *United States v. Bergfeld*, 280 F.3d 486, 489 (5th Cir. 2002) (holding that the "assertion of the right" factor "weighed exclusively in [the defendant]'s favor, as he had no idea the indictment existed until it was unsealed").

Mere knowledge of a possible criminal case does not trigger any obligations for the defendant. In *Leaver*, for example, the defendant was aware of the possibility of criminal prosecution, but because there was no evidence that he knew of the indictment, the defendant was not taxed for asserting his speedy trial right upon arrest. *See* 358 F. Supp. 2d at 272.

The Government admits that Defendant could not have been aware of the Indictment (*see* Gov. Mem. at 16),[8] but seeks to place its constitutional obligation to bring Defendant to trial on Defendant himself by arguing that, after the Government's inaction caused a Rule 48(b) dismissal, Defendant was obliged to periodically check-in with his attorney or the Government until the Government decided whether or not to bring charges. *See id.* Defendants who are unaware of an indictment have no responsibility to prod the Government from its lethargy. *See, e.g.*, *Rayborn v. Scully*, 858 F.2d 84, 90 (2d Cir. 1988) (the government bears the burden of bring the accused to trial ); *United States v. Mendoza*, 530 F.3d 758, 763 (9th Cir. 2008) ("[The defendant] was unaware of the indictment, so he did not know that he needed to return. And it was not [the defendant]'s responsibility to contact the government during the investigation."). The Government cites no authority for its contrary position, which would be palpably unfair, as it would penalize Defendant for lacking knowledge that—by sealing the Indictment and refraining from giving notice to Defendant or his counsel—the Government affirmatively withheld from him.[9]

---

[8] The Government offers no support for its unsourced and inaccurate claim that, during his frequent business and family trips in Europe, Defendant was consciously avoiding the Western District of New York in an attempt to escape apprehension on a sealed indictment of which he was unaware.

[9] As the Ninth Circuit cogently explained, "[a]fter *Doggett*, the government was required to make some effort to notify [the defendant] of the indictment, or otherwise continue to actively attempt to bring him to trial, or else risk that [the defendant] would remain abroad while the constitutional speedy-trial clock ticked." *Mendoza*, 530 F.3d at 763.

Thus, *Doggett* and its progeny control. Because he was unaware of the Indictment, Mr. Zavisic's post-arrest assertion of his speedy trial right was timely and the third *Barker* factor weighs against the Government.

## POINT IV

### THE GOVERNMENT CONCEDES PRESUMPTIVE PREJUDICE AND IGNORES DEFENDANT'S ASSERTIONS OF PARTICULARIZED PREJUDICE

Defendant argued both presumptive and particularized prejudice. *See* Dft. Mem. at 16-18. The Government concedes the first argument and ignores the second; thus, the fourth *Barker* factor weighs heavily against the Government as well.

The Government does not attempt to show that Mr. Zavisic has not suffered the kind of unspecified prejudice that the *Doggett* Court intended the presumption to capture (*see Doggett*, 505 U.S. at 655-56). It simply attempts to distinguish *Doggett* itself on the grounds that the delay in *Doggett* was longer, and that here the Government was not idle (*see* Gov. Mem. at 17-18). Both arguments fail, and miss *Doggett*'s broader principle.

Although conceding presumptive prejudice (*see* Gov. Mem. at 11), the Government argues that the Court must nevertheless deny relief because the delay was not as long as the delay in *Doggett* (*see id.* at 17-18). *Doggett*, of course, does not create a bright-line rule, but rather a relationship: the longer the delay, the more heavily will unrebutted presumptive prejudice weigh against the Government. *See Doggett*, 505 U.S. at 655, 657-58. Indeed, even a two-year delay can raise a presumption of prejudice powerful enough to warrant dismissal. *See United States v. Ingram*, 446 F.3d 1332, 1338-39 (11th Cir. 2006).

Thus, the Government's claim that it was not idle (*see* Gov. Mem. at 18)—besides being flatly contradicted by the Government's own account of its pursuit (*see supra* Point II)—misses the point. As the weight of the unrebutted presumptive prejudice compounds over time, the only

question is how heavily the 63-month delay (or, as the Government claims, the 49- or 54-month delay) will weigh the fourth factor in Defendant's favor. The Second Circuit answered that question when it held that a 54-month delay weighed heavily against the Government. *See New Buffalo Amusement Corp.*, 600 F.2d at 377.

Nor did the Government refute Defendant's assertions of particularized prejudice. The Government bears the burden of rebutting such assertions. *See United States v. Ostroff*, 340 F. Supp. 2d 362, 368 (S.D.N.Y. 2004) (citing *Doggett*, 505 U.S. at 658). Defendant's Opening Memorandum argued that the Government's delay caused economic and psychic harm beyond that which would have accompanied a timely criminal prosecution. *See* Dft. Mem. at 17-18. The Government's papers, curiously, offer no actual response; after detailing the three categories of prejudice that *Barker* identified and ignoring the Second Circuit's post-*Barker* statement that the prejudice resulting from a denial of the right to a speedy trial "takes various forms" (*New Buffalo Amusement Corp.*, 600 F.2d at 379), the Government simply asserts that Defendant did not allege particularized prejudice (*see* Gov. Mem. at 17). Obviously, the Government does not satisfy its burden to rebut allegations of particularized prejudice by pretending that they do not exist.

## **CONCLUSION**

When Defendant's unrebutted assertions of both particularized and presumptive prejudice are combined with the extraordinary delay, the severity of the Government's conceded negligence, and Defendant's timely assertion of his speedy trial right, the case for dismissal is overwhelming. For the foregoing reasons, the Court should grant Defendant's motion and order that the Indictment be dismissed.

- 11 -

DATED:   Buffalo, New York
         May 14, 2013

                                    Respectfully submitted,

                                    PHILLIPS LYTLE LLP

                                        /s/Timothy W. Hoover
                                  _____
                                  Timothy W. Hoover
                                  Spencer L. Durland
                                  3400 HSBC Center
                                  Buffalo, NY 14203-2887
                                  Phone (716) 504-5754
                                  Facsimile (716) 852-6100
                                  thoover@phillipslytle.com
                                  sdurland@phillipslytle.com
                                  Counsel for Defendant Vedran Zavisic

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
───────────────────────────────────────

UNITED STATES OF AMERICA,　　　　　　　　　　07-CR-193-A

　　　v.　　　　　　　　　　　　　　　　　　**CERTIFICATE OF SERVICE**

VEDRAN ZAVISIC,

　　　　　Defendant.

───────────────────────────────────────

　　　The undersigned certifies that a copy of the foregoing was served on the following, by the means indicated, on May 14, 2013:

　　　George C. Burgasser (via CM-ECF)
　　　Assistant United States Attorney
　　　United States Attorney's Office
　　　Western District of New York
　　　138 Delaware Ave., Federal Centre
　　　Buffalo, NY 14202
　　　Phone (716) 843-5700
　　　Facsimile (716) 551-3052
　　　george.c.burgasser@usdoj.gov
　　　Counsel for United States of America.

　　　　　　　　　　　　　　　　　　PHILLIPS LYTLE LLP

　　　　　　　　　　　　　　　　　　　/s/Timothy W. Hoover
　　　　　　　　　　　　　　　　　　───────────────────────
　　　　　　　　　　　　　　　　　　Timothy W. Hoover
　　　　　　　　　　　　　　　　　　Spencer L. Durland
　　　　　　　　　　　　　　　　　　3400 HSBC Center
　　　　　　　　　　　　　　　　　　Buffalo, NY 14203-2887
　　　　　　　　　　　　　　　　　　Phone (716) 504-5754
　　　　　　　　　　　　　　　　　　Facsimile (716) 852-6100
　　　　　　　　　　　　　　　　　　thoover@phillipslytle.com
　　　　　　　　　　　　　　　　　　sdurland@phillipslytle.com
　　　　　　　　　　　　　　　　　　Counsel for Defendant Vedran Zavisic