UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____


UNITED STATES OF AMERICA,

      v.                                               **07-CR-193-A**

VEDRAN ZAVISIC,

         Defendant.


_____




**DEFENDANT'S MEMORANDUM IN OPPOSITION TO THE GOVERNMENT'S
OBJECTIONS TO REPORT AND RECOMMENDATION**




PHILLIPS LYTLE LLP
Timothy W. Hoover
Spencer L. Durland
3400 HSBC Center
Buffalo, NY 14203-2887
Phone (716) 504-5754
Facsimile (716) 852-6100
thoover@phillipslytle.com
sdurland@phillipslytle.com
Counsel for Defendant Vedran Zavisic

## PRELIMINARY STATEMENT

The Government charged the defendant in this case, Vedran Zavisic, with a narcotics offense, but the charges were dismissed when the Government failed to proceed, and Mr. Zavisic relocated to Europe.  Unbeknownst to Mr. Zavisic, the Government then indicted him under seal and waited for him to fall into its lap.  He eventually did—four-and-a-half years later.

Mr. Zavisic moved for dismissal, arguing that this inordinate delay violated his constitutional right to a speedy trial.  After careful consideration, Magistrate Judge Schroeder agreed, finding that none of the four balancing factors (length of the delay, reason for the delay, the defendant's assertion of his right to a speedy trial, and prejudice from the delay) that the U.S. Supreme Court announced in *Barker v. Wingo*, 407 U.S. 514 (1972) weighed against Mr. Zavisic and three weighed in his favor.  *See* Report, Recommendation and Order, *United States v. Zavisic*, No. 07-CR-00193 (W.D.N.Y. Aug. 15, 2013) [Docket No. 23] ("R&R").[1]  The Government objects to that determination.  *See* Government Objections to the Magistrate Judge's Report, Recommendation and Order, filed August 28, 2013 [Docket No. 24] ("Objections").  The Court must now decide whether the Government's recitation of its motion papers and its four objections to the R&R—none of which cite supporting authority—have established the R&R to be clearly erroneous or contrary to law.

The Court should answer that question in the negative.  For one thing, the Court need not even address the Objections because they rehash the Government's motion papers, are general and conclusory, and lack legal support.  Even if the Court considers the Objections, it should adopt the R&R because Judge Schroeder correctly applied *Barker*'s four-part balancing test:

---

[1]     For documents filed with the Court, all pinpoint citations refer to the CM/ECF page numbers.

- *Length of the Delay*.  The Government conceded a 49-month delay and this Court recently rejected the ground on which the Government argues that the delay was not, as Judge Schroeder found, 54 months;

- *Reason for the Delay*.  The Government concedes that its four-and-a-half years of nearly complete idleness constituted "negligence";

- *Assertion of the Right*.  Mr. Zavisic could not have asserted his speedy trial right before becoming aware of the charges in the sealed indictment, which did not occur until his arrest, after the end of the delay at issue; and,

- *Prejudice*.  The Government does nothing to rebut the powerful presumption of prejudice that arises from a (at minimum) 54-month delay.

Therefore, the Government violated Mr. Zavisic's constitutional right to a speedy trial and the Court should adopt the R&R in its entirety.

## COUNTERSTATEMENT OF FACTS AND STATEMENT OF THE CASE

In October 2006, Mr. Zavisic was arrested on narcotics charges, charged by criminal complaint, released on $5,000 bail, and driven back to Canada by federal law enforcement agents.  *See* R&R at 2 (citing Docket Nos. 1 & 4).  The criminal complaint was automatically dismissed effective December 27, 2006 when the Government failed to proceed.  *See id.* at 2 (citing Docket No. 6); *id.* at 2 n.1.  No bail violation was ever filed against Mr. Zavisic and he was not absent from any required court appearance.  *See id.* at 2 (citing Affidavit of Timothy W. Hoover in Support of Defendant's Motion to Dismiss, sworn to March 22, 2013 [Docket No. 15-1] ("Hoover Aff.") ¶ 8).  Upon the petition of Mr. Zavisic's mother, Dragica Zavisic, the Court refunded the $5,000 bail Mr. Zavisic had deposited with the Clerk's Office to secure his release on the criminal complaint.  *See id.* at 3 (citing Docket No. 9).

Around May 2007, a confidential source apparently told the Government that Mr. Zavisic had "fled"[2] to Eastern Europe.  *See id.* (citing Government's Response to Defendant's Motions, filed May 7, 2013 [Docket No. 19] ("Gov.'s Opp'n Mem.") at 4).  On August 14, 2007, the Government indicted Mr. Zavisic under seal and issued a warrant for his arrest.  *See id.* (citing Docket No. 1).  Two weeks later, the Government filed a U.S. Customs Fugitive Report.  *See id.* (citing Gov.'s Opp'n Mem. at 4).[3]  The Government filed no due diligence report or document with the Court between late 2006 and 2012.

After returning to Serbia, Mr. Zavisic moved to Novi Sad, where he lived and worked until 2012.  *See id.* at 3-4 (citing Hoover Aff. ¶¶ 13-14).  On October 14, 2007, he married his fiancé, Bosiljka Zaric, who was, like Mr. Zavisic, a Canadian citizen.  *See id.* at 4 (citing Hoover Aff. ¶¶ 15-16).  On June 6, 2008, they had their only child.  *See id.* (citing Hoover Aff. ¶15-16).  Mr. Zavisic applied to the Canadian government to recognize his child's citizenship, and requested that it issue his child a Canadian passport.  *See id.* (citing Hoover Aff. ¶18).  The application, which Mr. Zavisic filed with the Canadian embassy in Belgrade, contained Mr. Zavisic's home address and other contact information.  *See id.* (citing Hoover Aff. ¶ 19).  The Canadian government granted both of Mr. Zavisic's requests.  *See id.* (citing Hoover Aff. ¶ 20).

Mr. Zavisic's work required extensive travel; he repeatedly crossed both European Union and non-European Union borders within Europe.  *See id.* at 4 (citing Hoover Aff. ¶¶ 24-25).  He travelled with his Canadian passport and filed his Serbian address with the Canadian embassy. *See id.* (citing Hoover Aff. ¶¶ 23 & 25).

---

[2]        Judge Schroeder took issue with the Government's use of the term "fled," since "[a]s of December 27, 2006, the Criminal Complaint against the defendant was dismissed and there was no restriction on the defendant's right to travel."  R&R at 3 n.2.

[3]        Judge Schroeder also took issue with the Government's characterization of Mr. Zavisic as a "fugitive," since the criminal complaint was dismissed.  *See* R&R at 3 n.3.

Until February 2009, Mr. Zavisic was not a Serbian citizen.  *See id.* (citing Hoover Aff. ¶ 29).  As a non-citizen, the Serbian government required Mr. Zavisic to maintain a visa filed with the Ministry of the Interior, maintain a file with the police in Novi Sad, appear for interviews at the police station, and then check in at the station every three months, and maintain a work permit issued by the Labor Office.  *See id.* (quoting Hoover Aff. ¶¶ 28-29).  In or about June 2011, Mr. Zavisic filed his latest home and work addresses with the Canadian Embassy when he applied to replace his expired passport.  *See id.* at 5 (citing Hoover Aff. ¶ 30).

During this time, the Government's investigation stagnated.  Though a cooperator told the Government in May 2007 that Mr. Zavisic had returned to Eastern Europe, it was not until August 24, 2009—two years after the sealed indictment was returned—that the Government asked Canadian authorities to confirm that Mr. Zavisic had left Canada.  *See id.* (citing Gov.'s Opp'n Mem. at 5).  The Government then idled for another two years.  *See id.* (citing Gov.'s Opp'n Mem. at 5, 17-19).  On September 1, 2011, the Government asked the U.S. Embassy in Vienna, Austria for assistance.  *See id.*  Two weeks later, the prosecutor executed the Prosecutor's Agreement to Extradite; a month after that, the indictment was unsealed, a necessary predicate to completing an international arrest warrant ("Red Notice").  *See id.* (citing Gov.'s Opp'n Mem. at 18 & 21).  The Government did not file the Red Notice, however, until February 10, 2013—four months later.  *See id.* at 5-6 (citing Gov.'s Opp'n Mem. at 38).

Days after the Red Notice issued, Mr. Zavisic was arrested while crossing the border between Serbia and Hungary.  *See id.* at 6.  Mr. Zavisic was returned to the United States on September 21, 2012 and arraigned three days later.  *See id.*

Mr. Zavisic timely moved to dismiss the indictment for violation of his right to a speedy trial.  *See id.* at 7 (citing Memorandum in Support of Defendant's Motion to Dismiss and Other

Motions, filed March 22, 2013 [Docket No. 15] ("Def.'s Supp. Mem.")).  The Government

responded by memorandum but offered no affidavit, and sought no hearing, to contest Mr.

Zavisic's factual claims.  Judge Schroeder heard oral argument on May 23, 2013.  *See id.*

On August 15, 2013, Judge Schroeder issued the R&R, which concludes that the

Government violated Mr. Zavisic's constitutional right to a speedy trial and recommends that all

charges be dismissed.  *See id.* at 20.  On August 28, 2013, the Government filed objections to

Judge Schroeder's R&R.  *See* Objections.

## ARGUMENT

The Court should adopt the R&R because Judge Schroeder's analysis is correct and the

Objections are conclusory, unsupported, and meritless.  Primarily, the Objections replicate the

Government's motion papers and assert generalized error.  Of the four specific objections leveled

against Judge Schroeder's R&R, two were specifically raised and rejected below, a third is

irrelevant to the *Barker* analysis, and none provide supporting legal authority.  But whether or

not the Court considers the Objections is ultimately immaterial, because Judge Schroeder

correctly concluded that the Government violated Mr. Zavisic's constitutional right to a speedy

trial.  Judge Schroeder's analysis and conclusion align with recent cases in which Magistrate and

District Judges in this District (including the Court) have dismissed indictments for similar

constitutional speedy trial violations.

## POINT I

### THE DISTRICT COURT CAN ADOPT THE R&R WITHOUT CONSIDERING THE OBJECTIONS, BECAUSE THEY PRIMARILY REITERATE THE GOVERNMENT'S MOTION PAPERS AND OFFER NO LEGAL AUTHORITY TO SUPPORT THE GOVERNMENT'S FOUR SPECIFIC OBJECTIONS

While the District Court reviews a Magistrate Judge's report and recommendation *de*

*novo*, its review is nonetheless subject to some limitation.  The District Court is bound to review

*de novo* "only . . . those portions of the report and recommendation to which a party objects."

*Blum v. Schlegel*, 830 F. Supp. 712, 716 (W.D.N.Y. 1993), *aff'd*, 18 F.3d 1005 (2d Cir. 1994),

(citing 28 U.S.C. § 636(b)(1)(C)); *Collins v. Foreman*, 729 F.2d 108, 112 (2d Cir. 1984)).

Objections must be specific and cite legal authority.  *See* W.D.N.Y. Local R. Crim. Proc.

59(b)(2) ("Written objections . . . shall specifically identify the portions of the proposed findings

and recommendations to which objection is made and the basis for each objection, and shall be

supported by legal authority.")).  The District Court need not consider general or conclusory

objections, nor those that simply rehash the objecting party's motion papers.  *See Camardo v.*

*Gen. Motors Hourly-Rate Employees Pension Plan*, 806 F. Supp. 380, 382 (W.D.N.Y. 1992).  In

other words, the objecting party must earn the right to *de novo* review by lodging precise

objections to specific parts of the report and recommendation.  Moreover, the report should be

adopted unless the objecting party shows it to be either clearly erroneous or contrary to law.  *See*

28 U.S.C. § 636(b); W.D.N.Y. Local R. Crim. Proc. 59.

Here, the Government simply refiles its motion papers, pausing in four places to quibble

with the R&R.  None of these specific objections deserve the Court's consideration.

The Government's first specific objection contends that Judge Schroeder erred in

including in the length of the delay the time it took the Government to complete the Red Notice.

*See* Objections at 9.  The Government raised this argument below (*see* Gov.'s Opp'n Mem. at

10), cites no supporting authority, and ignores contrary authority—namely, *United States v.*

*Cheng*, No. 05-CR-71-A, 2013 WL 1704912, at *4 (W.D.N.Y. Jan. 9, 2013), *adopted by*, No. 05-

CR-71, 2013 WL 1715443 (W.D.N.Y. Apr. 19, 2013); Report and Recommendation, *United*

*States v. Risi*, No. 10-CR-46-S (W.D.N.Y. May 20, 2013)  [Docket No. 35] ("*Risi* R&R") at *11-

13, *adopted by*, No. 10-CR-46-S (W.D.N.Y. Aug. 20, 2013) [Docket No. 43] (further

proceedings pending relating to a bail-jumping charge), and *United States v. Washnuk (Dugas)*, No. 07-CR-174-A, 2013 WL 2425122, at \*3 (W.D.N.Y. June 3, 2013) ("*Dugas*").[4]   Moreover, the Government concedes that the delay here lasted at least a presumptively prejudicial 49 months (*see* Objections at 9), and cites no authority for the proposition that a 49-month delay is meaningfully different from a 54-month delay for speedy trial purposes.

The Government's second specific objection charges that the R&R did not give sufficient weight to Mr. Zavisic's Serbian citizenship.  *See* Objections at 10-11.  Again, the Government cites no legal authority for its position and specifies no error, but simply states its belief that its argument should have persuaded Judge Schroeder.

The Government's third specific objection is irrelevant to the *Barker* analysis.  In its motion papers, the Government referred to Mr. Zavisic as a "fugitive" and stated that he "fled" from Canada to Eastern Europe.  *See* Gov.'s Opp'n Mem. at 4, 13.  Judge Schroeder chided the Government for these representations, since the criminal complaint against Mr. Zavisic was dismissed and the Government filed the subsequent indictment under seal.  *See* R&R at 3 nn.2 & 3; *id.* at 16.  In its Objections, the Government justifies its use of these terms by stating that "fled" is the term its confidential source used and "fugitive" is the word used in the documents it was discussing (e.g., the "U.S. Customs Fugitive Report").  Objections at 11 & nn. 4-5.  The Government does not, however, contend that its characterization is accurate—i.e., that Mr.

---

[4]    The Government offers no distinction between these cases (each of which dismissed an indictment on speedy trial grounds) and the case before the Court.  In *Dugas*, as in this case, the criminal complaint was dismissed, there was no bail violation, and a sealed indictment was subsequently sought and returned when no charge was pending.  *See Dugas*, 2013 WL 2425122, at \*1-2.  The facts in *Cheng* and *Risi* are arguably less compelling, in that the defendants in those cases did not return to court on complaint proceedings and had bail violations issued against them.  *See Cheng*, 2013 WL 1704912, at \*1; *Risi* R&R at \*3.  These closely analogous cases confirm Judge Schroeder's conclusion in the R&R and the need to dismiss the indictment against Mr. Zavisic.

Zavisic actually was a "fugitive" who "fled" to Eastern Europe to escape prosecution.  *See id.*  Its

reasons for mischaracterizing Mr. Zavisic's return to Eastern Europe are therefore irrelevant to

the *Barker* analysis and need not be considered.

For its final specific objection, the Government argues that Judge Schroeder was wrong

to rely on *Doggett v. United States*, 505 U.S. 647 (1992) for the proposition that 54 months of

delay raises a powerful presumption of prejudice.  *See* Objections at 15.  The Government again

recites its original motion papers (*compare id.* at 15-16, *with* Gov.'s Opp'n Mem. at 18), and

provides no legal authority to support its contention that Judge Schroeder's reliance on

analogous Supreme Court precedent was clearly erroneous or contrary to law.

The Government's Objections mostly replicate its motion papers and complain generally

about the R&R's outcome.  Of the four specific objections the Government raises, two were

raised and rejected below, a third is irrelevant to the *Barker* analysis, and none are supported by

legal authority.  The Objections therefore need not be considered.

## POINT II

### WHETHER OR NOT THE COURT CONSIDERS THE OBJECTIONS, IT SHOULD ADOPT THE R&R IN ITS ENTIRETY BECAUSE JUDGE SCHROEDER CORRECTLY APPLIED THE *BARKER* TEST

The balancing test announced in *Barker v. Wingo*, 407 U.S. 512 (1972) remains the

controlling rubric for evaluating a speedy trial motion for dismissal.  *Barker* sets forth four

factors, each a separate inquiry: (1) "whether delay before trial was uncommonly long"; (2)

"whether the government or the criminal defendant is more to blame for that delay"; (3)

"whether, in due course, the defendant asserted his right to a speedy trial;" and (4) "whether he

suffered prejudice as the delay's result."  *Doggett*, 505 U.S. at 651 (citing *Barker*, 407 U.S. at

530).

Telegraphing the weakness of its legal position, the Government opens its Objections by suggesting that the Court decline to adopt a remedy as serious as dismissal. *See* Objections at 7. Similar hand-wringing in *Doggett* prompted the Supreme Court to respond that "[t]he Government . . . can hardly complain too loudly, for persistent neglect in concluding a criminal prosecution indicates an uncommonly feeble interest in bringing an accused to justice." *Doggett*, 505 U.S. at 657. As Judge Schroeder found (*see* R&R at 16-17, 19-20), the Government's post-indictment investigation of Mr. Zavisic was nothing if not persistently neglectful. The continued vitality of dismissal as a remedy for such neglect, despite its undisputed severity, is a testament to the importance placed upon the right to a speedy trial. The *Barker* test was specifically designed to determine whether that remedy is required, and Judge Schroeder applied it correctly: no factor weighs against Mr. Zavisic and three weigh in his favor.

**A.     The 54-Month Delay Between the Return of the Sealed Indictment and the Commencement of Extradition Proceedings Triggers the *Barker* Analysis and Weighs Heavily Against the Government**

The length of the delay serves two functions. Initially, it is a threshold to screen out the normal delays incident to any system of considered justice. *See Doggett*, 505 U.S. at 651-52. Delays that exceed this minimum period, which *Doggett* pegged at one year (*see id.* at 652 n.1), are "presumptively prejudicial" and trigger the *Barker* analysis (*see id.* at 651-52). The length of the delay also bears on the presumption of prejudice, which increases in proportion with the delay's duration. *See id.* at 655.

Naturally, to determine the length of a delay, a court must identify its beginning and end. The period of delay begins when the Sixth Amendment right attaches: upon "arrest, indictment, or other official accusation." *Id.* Where the defendant is abroad, the period of delay ends once the Government formally commences extradition proceedings. *See Cheng*, 2013 WL 1704912 at

- 10 -

*4; *Dugas*, 2013 WL 2425122 at *3; *Risi* R&R at 13.  Judge Schroeder found that, because the

criminal complaint was dismissed, the speedy trial right did not (re)attach until August 14, 2007,

the day the sealed indictment was returned.  *See* R&R at 10.[5]  The period of delay ended four-

and-a-half years later, when the Government filed the Red Notice on or about February 10, 2012.

*See* R&R at 12.  Thus, at a minimum, the period of delay is, as Judge Schroeder held, 54 months.

*See id.* at 11-12.

As it did in its motion papers (*see* Gov.'s Opp'n Mem. at 10), the Government objects

that the period of delay should end once the Government *initiates* the Red Notice process (*see*

Objections at 9).  The Government cites no authority for its position and ignores the contrary

holdings in *Cheng*, *Dugas*, and *Risi*.  Judge Schroeder correctly found that the period of delay is

(at the least) 54 months.  That period—like the 49-month period the Government concedes (*see*

Objections at 9)—easily triggers a *Barker* analysis and gives rise to a powerful presumption of

prejudice (*see infra* Point II.D).

> **B.      Contrasting the Government's Four-and-a-Half Years of Near-Complete
> Inaction with Mr. Zavisic's Open Living and Working, Frequent Travel, and
> Contact with Two Governments Makes Clear That Judge Schroeder
> Correctly Attributed the Entire 54-Month Delay to the Government**

The second *Barker* factor requires that the Court scrutinize the conduct of the

Government and Mr. Zavisic.  *See Barker*, 407 U.S. at 531.  The Government must always

exercise due diligence in locating and apprehending the accused, even if the accused lives abroad

(*see Rayborn v. Scully*, 858 F.2d 84, 90 (2d Cir. 1988)), and the Government bears the burden of

---

[5]      Before Judge Schroeder, Mr. Zavisic argued that the period of delay was 63 months, because the speedy trial right that attached upon his original arrest survived the automatic dismissal of the criminal complaint.  *See* Def.'s Supp. Mem. at 9-10; Reply Memorandum in Further Support of Defendant's Motion to Dismiss, filed May 14, 2013 [Docket No. 20] ("Def.'s Reply Mem.") at 3).  Though he maintains its viability and continues to press that argument here, dismissal is required whether the delay is 63 months, 54 months, or 49 months, all of which are presumptively prejudicial.

justifying significant delay in apprehending him (*see United States v. New Buffalo Amusement Corp.*, 600 F.2d 368, 377 (2d Cir. 1979)).  In *United States v. Leaver*, 358 F. Supp. 2d 255 (S.D.N.Y. 2004), for example, the Government initially relied on a foreign investigatory agency to locate the defendant, but failed to provide that agency with sufficient information.  *See Leaver*, 358 F. Supp. 2d at 270.  Its later attempts to apprehend the defendant, whose indictment remained under seal, consisted of database searches and simply waiting for the defendant to arrive in the United States.  *See id.* at 270-71.  This investigation, the court held, "fell short of the diligence required by the Sixth Amendment."  *Id.* at 270; *accord United States v. Ostroff*, 340 F. Supp. 2d 362, 368-69 (S.D.N.Y. 2004) (rejecting as deficient a similarly passive investigation).

Judge Schroeder correctly found that the Government's investigation here was likewise deficient.  In August 2007, the Government made a handful of ministerial notations reflecting Mr. Zavisic's relocation[6] and returned a sealed indictment against him on August 14, 2007.  *See id.*  The Government admits that it did nothing for the next two years.  *See R&R at 14.  In August 2009, the Government asked the Canadian authorities whether Mr. Zavisic had left Canada.  *See id.*  The Government then took another two-year hiatus.  *See id.*  In the fall of 2011—over four years after issuing the sealed indictment—the Government began drafting a Red Notice.  *See R&R at 17.  And even then, it dallied; though the Government unsealed the indictment in October 2011, no Red Notice issued until four months later.  *See id.*  One week after the Government filed the Red Notice, Mr. Zavisic was arrested at the border between Serbia

---

[6]        The titles of these internal agency documents include the word "fugitive," but that, as Judge Schroeder noted (*see* R&R at 3 n.3, 16), does not make Mr. Zavisic a "fugitive" for Sixth Amendment purposes.  Because of the implications it carries, that term has been carefully defined as a person who, "while abroad . . . learn[s] that they are under indictment and make[s] no effort to return to the United States to face charges."  *United States v. Blanco*, 861 F.2d 773, 779 (2d Cir. 1988).  Mr. Zavisic lived, worked, and travelled openly (*see* R&R at 14, 16-17), and had no knowledge of the indictment (*see id.* at 17-18).

and Hungary.  *See id.*  The Government offers no justification for its four-and-a-half years of

"total inaction."  R&R at 17.  Indeed, the Government concedes that it was negligent.  *See*

Objections at 12.

By contrast, Mr. Zavisic's conduct during the period of delay was entirely innocent.  The

Government does not contest Mr. Zavisic's claims, supported by affidavit, that he was living and

working openly, crossing borders, and maintaining regular contact with the Serbian and

Canadian Governments (*see* R&R at 14, 16-17).  Therefore, the R&R correctly concluded that

the Government is wholly responsible for the 54-month delay, and that the second *Barker* factor

favors Mr. Zavisic.  *See id.* at 17, 20.

In addition to the general objection to Judge Schroeder's conclusion, implicit in its

recitation of its arguments below, the Government raises two specific objections to the R&R's

resolution of *Barker*'s second element.  The first is the Government's justification for using the

terms "fled" and "fugitive."  Though troubling, the Government's mischaracterizations are

irrelevant to the *Barker* analysis.  *See supra* Point I.

The second, though relevant to the *Barker* analysis, is meritless.  The Government

complains that Judge Schroeder gave little weight to its argument that some unspecified portion

of the delay should be attributed to Mr. Zavisic because he became a Serbian citizen in 2009 and

Serbia is not bound to extradite its nationals.  *See* Objections at 10-11.  The Government does

not supply any legal or logical reason why Judge Schroeder's decision was clearly erroneous or

contrary to law.  And there are at least four reasons why Judge Schroeder was right to give the

Government's argument little weight.  First, that argument is irrelevant to the delay between the

August 2007 return of the indictment and February 2009, when Mr. Zavisic became a Serbian

citizen.  Second, because the Government did not know that Mr. Zavisic became a Serbian

citizen until after his 2011 arrest, his citizenship cannot justify its negligence.  Third, there is no

indication that the Government attempted to determine if Serbia would agree to extradite Mr.

Zavisic, even though not required to do so.  Fourth, the Government's reference to Mr. Zavisic's

Serbian citizenship does not explain why it delayed filing the Red Notice, which would ensure

Mr. Zavisic's arrest if he crossed the Serbian border (as he often did).

 The Government did nothing for four years and almost nothing for six additional months.

*See* R&R at 16-17, 19.  During that time, Mr. Zavisic lived, worked, and travelled openly, and

kept two governments apprised of his whereabouts.  *See id.*  The Government could have found

him with even modest effort.  Therefore, the R&R correctly lays the responsibility for the 54-

month delay entirely at the Government's feet.  *See id.* at 19.

> **C.     Because Mr. Zavisic Was Unaware of the Indictment—as the Government
> Intended by Filing It Under Seal—His Post-Arrest Assertion of His Right to
> a Speedy Trial Was Timely**

 The "assertion of the right" factor weighs against the Government when a defendant who

the Government cannot establish was aware of the indictment asserts his speedy trial right after

his arrest.  *See Leaver*, 358 F. Supp. 2d at 272; *United States v. Brown*, 169 F.3d 344, 350 (6th

Cir. 1999); *United States v. Bergfeld*, 280 F.3d 486, 489 (5th Cir. 2002) (holding that the

assertion of the right factor "weighed exclusively in [the defendant]'s favor, as he had no idea

the indictment existed until it was unsealed"); *see also Doggett*, 505 U.S. at 654 (holding that a

defendant who is unaware of the indictment "is not to be taxed for invoking his speedy trial right

only after his arrest").

 Critically, it is Mr. Zavisic's knowledge of the *indictment* that the Government must

prove, not the substance of the Government's allegations or the existence of dismissed charges.

*See Doggett*, 505 U.S. at 653-54; *see also Dugas*, 2013 WL 2425122 at *4 (holding that, where

the defendant was aware a dismissed criminal complaint but unaware of a subsequent sealed

indictment, "the fact that [she] did not invoke her speedy trial rights does not excuse the delay");

*contra* Objections at 13-14.

To establish the defendant's knowledge, the Government must offer more than

supposition.  In *Doggett*, the defendant's mother knew that he was wanted, and that two co-

conspirators had been convicted, but because the Government could not rebut testimony that this

information had never reached the defendant, the Court had to accept the defendant's ignorance

of the indictment.  *See id.* at 653-54.  *Leaver* is similar.  There, the defendant was aware of the

possibility of criminal prosecution, but because there was no evidence that he knew of the

indictment, he was not taxed for asserting his speedy trial right upon arrest.  *See Leaver*, 358 F.

Supp. 2d at 272.

The Government admits that Mr. Zavisic may not have been aware of the sealed

indictment,[7] but seeks to place its constitutional obligation to bring Mr. Zavisic to trial on Mr.

Zavisic himself by arguing that, after the Government's inaction caused a Rule 48(b) dismissal,

Mr. Zavisic was obliged to periodically check-in with his attorney or the Government until the

Government decided whether or not to bring new charges.  *See* Objections at 13-14.  Defendants

who are unaware of an indictment have no responsibility to prod the Government from its

lethargy.  *See, e.g.*, *Rayborn*, 858 F.2d at 90 (the government bears the burden of bring the

accused to trial); *United States v. Mendoza*, 530 F.3d 758, 763 (9th Cir. 2008) ("[The defendant]

was unaware of the indictment, so he did not know that he needed to return.  And it was not [the

defendant]'s responsibility to contact the government during the investigation.").  The

---

[7]    The Government offers no support for its unsourced and inaccurate suggestion that Mr. Zavisic consciously avoided the Western District of New York in light of the charges that, for all Mr. Zavisic knew, had been dismissed.  *See* Objections at 13.

Government cites no authority for its contrary position, which, incidentally, would be palpably unfair, as it would penalize Mr. Zavisic for lacking knowledge that the Government affirmatively withheld from him.

The Government's summary of Judge Schroeder's conclusion regarding the "assertion of the right" element—"the R&R found that Zavisic did not assert his right to a speedy trial until the date that he filed his motions" (Objections at 14)—suggests that Judge Schroeder weighed this element against Mr. Zavisic. On the contrary, Judge Schroeder found that Mr. Zavisic, like the defendants in *Doggett* and *Dugas*, was unaware of the indictment and therefore had no reason to assert his right to a speedy trial during the period of the delay at issue. *See* R&R at 17-18. While Judge Schroeder did not list Mr. Zavisic's "assertion of the right" as one of the elements weighing in his favor (*see id.* at 19-20), neither did Judge Schroeder say that it weighed against him. This resolution tallies with *Doggett*'s command that a defendant unaware of an indictment during the period of delay is not to be taxed for failing to assert his speedy trial right after arrest (*see Doggett*, 505 U.S. at 653-54[8]).

*Doggett* and its progeny control. Because Mr. Zavisic was unaware of the indictment, his post-arrest assertion of his speedy trial right was timely and the third *Barker* factor weighs in his favor, or at least, as the R&R concludes, does not weigh against him.

### D. The 54-Month Delay Attributable Entirely to the Government Gives Rise to a Powerful Presumption of Prejudice, Which the Government Does Not Attempt to Rebut

Courts "generally have to recognize that excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or . . . identify." *Doggett*, 505 U.S. at

---

[8]    Though Judge Schroeder did not cite *Doggett* on this point, he followed *Doggett*'s example by not holding the "assertion of the right" element against a defendant who had no reason to know of the indictment until his arrest, and thereafter moved to dismiss on speedy trial grounds.

655.  The longer the delay caused by official negligence, the greater the presumption of

evidentiary prejudice.  *See id.* at 657.  "Thus, [courts'] toleration of such negligence varies

inversely with its protractedness, and its consequent threat to the fairness of the accused's trial."

*Id.* (citation omitted).

      The Government bears the burden of rebutting a defendant's claim of prejudice.  *See*

*Ostroff*, 340 F. Supp. 2d at 368 (citing *Doggett*, 505 U.S. at 658).  If unrebutted, a 54-month

delay weighs heavily against the Government.  *See New Buffalo Amusement Corp.*, 600 F.2d at

377.  The Government offers no explanation for the 54-month delay here.  *See* R&R at 20.

Therefore, as the R&R concludes (*see id.* at 19-20), this factor weighs against the Government as

well.

      In its Objections, the Government claims that Judge Schroeder wrongly relied on *Doggett*

because here (it says), unlike in *Doggett*, the Government was not completely neglectful.  *See*

Objections at 15-16.  As with its other specific objections, the Government offers no supporting

authority for its argument and Judge Schroeder was right to reject it.  *Doggett* does not create a

bright-line rule, but rather a relationship: the longer the delay, the more heavily will unrebutted

presumptive prejudice weigh against the Government.  *See Doggett*, 505 U.S. at 655, 657-58.

Indeed, even a two-year delay can raise a presumption of prejudice powerful enough to warrant

dismissal.  *See United States v. Ingram*, 446 F.3d 1332, 1338-39 (11th Cir. 2006).

      Thus, the Government's claim that it "did not wait idly by until Zavisic fell into its

hands" (Objections at 15)—besides being flatly contradicted by the Government's own account

of its pursuit and its admission of negligence (*see* Point II.B, *supra*)—misses the point.  The

Government concedes that the delay here is presumptively prejudicial.[9]  *See* Objections at 9.

Since the weight of that presumptive prejudice compounds over time, the only question is how

heavily the 54-month delay will weigh the fourth factor in Mr. Zavisic's favor.  The Second

Circuit answered that question when it held that a 54-month delay weighed heavily against the

Government (*see New Buffalo Amusement Corp.*, 600 F.2d at 377) and the Objections offer no

reason to find otherwise.  Thus, Judge Schroeder correctly weighed the fourth *Barker* factor

against the Government.

---

[9]      Mr. Zavisic argued below—and maintains—that he has suffered specific
prejudice.  *See* Def.'s Supp. Mem. at 19-20; Def.'s Reply Mem. at 10-11.  Though Judge
Schroeder noted this contention, he did not reach it because he (correctly) found presumptive
prejudice.  *See* R&R at 19-20.  Therefore, the Government's opposition to Mr. Zavisic's specific-
prejudice claims (*see* Objections at 14-15) serves no purpose here.

## **CONCLUSION**

For the foregoing reasons, the Court should reject the Government's Objections and adopt the R&R in its entirety.

DATED:      Buffalo, New York
                September 20, 2013

                                        Respectfully submitted,

                                        PHILLIPS LYTLE LLP

                                          /s/Timothy W. Hoover
                                      _____
                                      Timothy W. Hoover
                                      Spencer L. Durland
                                      3400 HSBC Center
                                      Buffalo, NY 14203-2887
                                      Phone (716) 504-5754
                                      Facsimile (716) 852-6100
                                      thoover@phillipslytle.com
                                      sdurland@phillipslytle.com
                                      Counsel for Defendant Vedran Zavisic

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,                          **07-CR-193-A**

      v.                                              <u>**CERTIFICATE OF SERVICE**</u>

VEDRAN ZAVISIC,

        Defendant.

_____

      The undersigned certifies that a copy of the foregoing was served on the following, by the

means indicated, on September 20, 2013:

      George C. Burgasser (via CM-ECF)
      Assistant United States Attorney
      United States Attorney's Office
      Western District of New York
      138 Delaware Ave., Federal Centre
      Buffalo, NY 14202
      Phone (716) 843-5700
      Facsimile (716) 551-3052
      george.c.burgasser@usdoj.gov
      Counsel for United States of America.

                PHILLIPS LYTLE LLP

                  /s/Timothy W. Hoover
                _____
                Timothy W. Hoover
                Spencer L. Durland
                3400 HSBC Center
                Buffalo, NY 14203-2887
                Phone (716) 504-5754
                Facsimile (716) 852-6100
                thoover@phillipslytle.com
                sdurland@phillipslytle.com
                Counsel for Defendant Vedran Zavisic