IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

             v.                                    07-CR-193-A

VEDRAN ZAVISIC,

               Defendant.

_____


### GOVERNMENT'S REPLY TO DEFENDANT'S
### RESPONSE TO GOVERNMENTS OBJECTIONS TO THE
### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION


**THE UNITED STATES OF AMERICA,** by and through its attorneys, William J. Hochul, Jr., United States Attorney for the Western District of New York, and George C. Burgasser, Assistant United States Attorney, hereby submits its reply brief to the Defendant's Memorandum in Opposition to the Government's Objections to Report and Recommendation ("R&R") (Dkt. 26, filed September 20, 2013), and reiterates the request that this Court reject the R&R (Dkt. 23, filed August 15, 2013) and, instead, deny the defendant's motion to dismiss the Indictment on Sixth Amendment speedy trial grounds.


### PROCEDURAL HISTORY AND STATEMENT OF THE CASE

The government refers to the Government Objections to the Magistrate Judge's Report, Recommendation and Order (Dkt. 24, filed August 28, 2013, pp. 2-5).

The defendant's basic claim is that the government's lack of diligence in locating him and pursuing his extradition before February 10, 2012 caused a prejudicial delay that warrants dismissal of the Indictment.   On this point, the Magistrate Judge agreed and recommended dismissal of the charges contained in the Indictment on Sixth Amendment grounds.   (R&R, pp. 20-21.)

## DISCUSSION

**The Barker Factors**

The Supreme Court crafted a now familiar four-part balancing test to determine whether a Sixth Amendment violation occurs in a particular case.   The test includes a balancing of the following factors:   (1) the length of the delay; (2)the reason for the delay; (3) the defendant's assertion of the right to a speedy trial; and (4) the prejudice to the defendant caused by the delay.   Barker v. Wingo, 407 U.S. 514, 530 (1972); accord United States v. Vassell, 970 F.2d 1172, 1164 (2d Cir. 1989); Rayborn v. Scully, 858 F.2d 84, 89 (2d Cir. 1988).   Within the Barker framework, the balancing of the factors involves weighing "the conduct of both the prosecution and the defendant."   Rayborn, 858 F.2d at 89 (citing Barker, 407 U.S. at 530).   Based on Barker factors, this defendant has not been deprived of his Sixth Amendment Right to a speedy trial and the Magistrate Judge's R&R should not be adopted by this Court.

## 1.   Length of Delay and Reason for Delay

The government has at no point during these proceedings argued, or attempted to argue, that pursuing extradition or filing a Red Notice in this case, perhaps at some point

prior to February 10, 2012, would have been futile.   The Magistrate Judge's perception of the government's lack of diligence in pursuing extradition though is in error.   There are instances of due diligence that were put forth by the government in the procedural history, supra.   The government did not sit idle for 54 months.

Militating against the defendant's arguments concerning who should be assigned blame for the delay, cases from the District of Columbia Circuit establish generally that:

> In cases . . . where a defendant is located abroad for much of the delay – the hallmark of government diligence is extradition.   When the United States has a valid extradition treaty in place with a foreign country and prosecutors formally seek extradition pursuant to that treaty, courts routinely hold that the government has satisfied its diligence obligation.

United States v. Fernandes, 618 F. Supp. 2d 62, 69 (D.C. 2009) (citing United States v. Tchibassa, 452 F.3d 918, 925 (D.C. Cir. 2006)).   The government pursued and eventually succeeded in extraditing this defendant. Additionally, the government filed the Red Notice. Placed in the proper context, although the government might have pursued extradition at some point prior to February 10, 2012, the fact that the government did make that effort is important.

The defendant is thus left to rely heavily on the Supreme Court's decision in United States v. Doggett, 505 U.S. 647 (1992).   Doggett, however, is distinguishable from this case in many critical respects.   In Doggett, the government made no effort to pursue extradition of the defendant, but instead waited idly by until the defendant crossed back into United States after two years abroad and began living his life openly in the United States.   Id. at

3

649-50, 652-53.   Some six years after Doggett returned to the United States, and eight and half years after the return of an indictment, a simple credit check by the United States Marshals Service revealed Doggett's whereabouts.   See id. at 649-50.   In this Circuit, Doggett was the driving force behind the opinion in United States v. Leaver, 358 F. Supp. 2d 255 (S.D.N.Y. 2004).   There too, the government expended almost no effort to locate and apprehend a defendant for an approximately eleven-year period.   Id. at 269-71.   The Leaver Court thus concluded that where "the Government cho[o]ses to cease all active efforts [to locate the accused] and wait passively for chance to deliver [him] into its hands," the government will be held primarily responsible for the delay.   Id. at 271.

In this case, unlike Doggett and Leaver, the government did not wait idly by until the defendant fell into its hands, but followed through with its obligation to find this defendant and seek his extradition.   The government thus cannot be charged with the type of "findable negligence" that drove the Supreme Court's decision in Doggett.   Id. at 653.   Similarly, the concerns that were prevalent in the District Court's ruling in Leaver, which were primarily based on the same concerns that drove the United States Supreme Court's decision in Doggett, are not present here.   The government may have delayed its extradition efforts, but it did not wait idly by until the defendant fell into its grasp.   See Doggett, 505 U.S. at 657.

In most cases where indictments were dismissed on Sixth Amendment grounds, the courts have concluded that the government's due diligence obligation is not met where it fails to pursue extradition, either formally or informally.   Fernandes, 618 F. Supp. at 69; Leaver, 358 F. Supp. 2d at 271-72; see also United States v. Ottey, 2007 WL 2406966, *1 (W.D. Pa.

Aug. 21, 2007) (indictment dismissed where government did not seek extradition, defendant lived openly in the United Kingdom for seven years, and later returned unimpeded to the United States before being arrested at a traffic stop); United States v. Dionisio, 2008 U.S. Dist. LEXIS 93652 (W.D. Wis. Nov. 17, 2008) (indictment dismissed where government did not seek extradition of defendant from the Philippines, defendant lived openly in the Philippines before being arrested in Guam approximately four and half years after indictment, and the defense prejudiced by the loss of records); United States v. Mendoza, 530 F.3d 758, 763-64 (9th Cir. 2008) (indictment dismissed where the government did not make attempts to inform the defendant of indictment, locate the defendant abroad, or seek extradition); but see, United States v. McDonald, 172 F. Supp. 2d 941, 948-49 (W.D. Mich. 2001) (indictment dismissed because of government's fifteen-year delay in seeking extradition where defendant's whereabouts could have been easily determined).   The threshold requirement of extradition was met here, and coupled with the general consensus that extradition is sometimes alone sufficient to meet the due diligence standard, the government cannot alone be charged with the full weight of the delay that occurred in this case.   E.g., Fernandes, 618 F. Supp. 2d at 69.

Additionally, the defendant obtained his Serbian citizenship.[1]   Serbia is not bound to extradite its nationals.   See Article V of the Treaty between the United States and Serbia for the Mutual Extradition of Fugitives from Justice, U.S.-Yugo. Oct. 25. 1901, 32 Stat. 1890; see also, United States v. Diacolios, 837 F2d. 79 (2d Cir. 1988) (neither Greece nor the United

---

[1]The defendant places the date of citizenship in or about February 2009.   (See Exhibit, Dkt. 15, ¶ 29 and Dkt. 23 p.14).

States were bound to deliver its own citizens under that treaty).   The Magistrate Judge gave little or no attention to this point stating:   "In addition the government argues that the defendant had obtained his Serbian citizenship and Serbia is not bound to extradite its nationals."   (See Dkt. 23, p.15).   United States v. Diacolios, supra (providing that the government did not fail in carrying its burden of due diligence where the United States had a policy of not seeking extradition from Greece apart from a pre-existing extradition treaty then in place), and United States v. Blanco, 861 F.2d 773, 778 (2d Cir. 1988) (providing that the government did not fail in carrying its burden of due diligence by not pursuing extradition of defendant from Columbia after the Columbian President made clear that the extradition treaty would not be enforced).

Acknowledging that the burden ultimately falls on the government to pursue a defendant with customary diligence, "from indictment to arrest," Doggett, 505 U.S. at 656, the crux of the issue facing this Court with regard to analyzing the second factor of the Barker analysis boils down to whether the government's delay in pursing extradition and the filing of the Red Notice as to a defendant who apparently wanted neither event to occur, should be weighed, as the R&R found, heavily against the government.   For all the reasons previously advanced in the briefing on this matter, the government should be held accountable for some part of the approximately 54-month delay in the filing of the Red Notice and seeking extradition, but not so much as to throw the entire Barker balancing analysis in the defendant's favor.   The defendant should bear at least equal responsibility for the delay from February 2009 to February 10, 2012.

**2.      The Magistrate Judge Failed to Attach Proper Weight to the Defendant's Assertion of His Sixth Amendment Right**

The R&R attached little, if any, weight to what should be a driving force behind the Barker analysis in this case.   As an individual living in a foreign country, whether openly or not, the government was forced to attempt to find his location in Europe, file a Red Notice, and to seek his extradition.   The only way this would not have occurred was if the defendant voluntarily crossed the border into the United States, a decision the defendant no doubt willfully avoided knowing of the extremely serious drug trafficking charges pending against him at the time of his Rule 48(b) dismissal.   The Magistrate Judge found that the defendant did not assert his right to a speedy trial until the date that he filed his motions.[2]   (Dkt. 23, p. 18).   The defendant was arrested on February 17, 2012.   Dkt. 19-1, p. 45.   The defendant was arraigned on September 28, 2012, and a scheduling order was put in place.   Dkt. 5. The defendant filed his omnibus motion on March 22, 2013.   Dkt. 15.

The Barker Court reasoned that "barring extraordinary circumstances, we would be reluctant indeed to rule that a defendant was denied this constitutional right [to a Speedy Trial] on a record that strongly indicates . . . that the defendant did not want a speedy trial." Barker, 407 U.S. at 536 (emphasis added).   Such is the case here.

Even in fugitive/extradition cases, a defendant's one-time assertion of Sixth Amendment rights only after being informed of charges, arrested, or re-arrested, has been found wanting.   United States v. Blanco, 861 F.2d 773, 780 (2d Cir. 1988); United States v.

---

[2] It should also be noted that the indictment was unsealed, as was the arrest warrant, on October 12, 2011.

Ramos, 264 Fed. Appx. 57, 60 (2d. Cir 2008); United States v. Saric, 2011 WL 31079, *9 (S.D.N.Y. January 4, 2011).   Having failed to lodge a Sixth Amendment claim for the same duration as the government's delay in seeking extradition, it is readily apparent that the defendant did not desire a speedy trial and, therefore, should not be able to now complain that he did not get one.   Barker, 407 U.S. at 536.   Accordingly, this factor weighs heavily against the defendant.

**3.     There Was No Prejudice to the Defendant**

As stated in the Government Objections to the Magistrate Judge's Report, Recommendation and Order (Dkt. 24, pp.14-16), the defendant cannot assert the type of particularized prejudice that normally accompanies a successful Sixth Amendment challenge.   The defendant does not assert any pre-arrest prejudice but only contends prejudice that occurred after his arrest.   (Dkt. 26, p. 18, fn. 9).   The defendant asserts that the government has conceded that there was presumptive prejudice.   (Dkt. 26, p. 18). However, the government actually stated that the length of delay "likely falls within the purview of what both the Supreme Court and the Second Circuit have deemed as presumptively prejudicial." (Dkt. 19, p. 10; Dkt. 24, p. 9).   In acknowledging that there could be a presumptively prejudicial delay, that factor operated as a "triggering mechanism" requiring an analysis and consideration of the three other factors in determining whether the defendant's Sixth Amendment right to a speedy trial was violated.   Barker, supra at 530. There was no concession by the government as to the fourth factor.   The Magistrate Judge incorrectly found there to be presumptive prejudice even though the defendant conceded (Dkt. 15, pp. 17-18) that the only specific prejudice that he could allege was post-arrest.   As

stated by the Magistrate Judge:   "The defendant cannot claim he was subjected to oppressive pretrial incarceration; nor does he claim anxiety and concern during the period of the delay; nor does he expressly assert that the delay has caused his defense to be impaired."   (Dkt. 23, p. 19).   The defendant asserted that he in fact only suffered specific prejudice in the nature of the anxiety and concern of the defendant for his wife and young son.   (Dkt. 23, p. 19).   This did not occur until after his arrest.   Even though the Magistrate Judge found that "[i]t is reasonable to find that this delay"'intensifie[d]' the 'presumption that pretrial delay has prejudiced the defendant'" (Dkt. 23, p. 19), the defendant's admissions limiting the specific prejudice to a post-arrest timeframe assists the government in rebutting any presumptive prejudice.   The <u>Barker</u> Court specifically identified three types of prejudice the Sixth Amendment was designed to protect:   (1) preventing oppressive pretrial incarceration; (2) minimizing anxiety and concern of the accused; and (3) limiting the possibility that the defense will be impaired.   <u>Barker</u>, 407 U.S. at 532.   The defendant cannot rely on any of these particularized forms of prejudice because the delay in this case neither affects nor creates them.

## CONCLUSION

This Court should reject the Magistrate Judge's R&R in its entirety and issue a

Decision and Order denying the defendant's motion to dismiss the Indictment on Sixth Amendment grounds.

DATED: Buffalo, New York, September 27, 2013.

WILLIAM J. HOCHUL, JR.
United States Attorney

BY:    S/GEORGE C. BURGASSER
       Assistant United States Attorney
       United States Attorney's Office
       Western District of New York
       138 Delaware Avenue
       Buffalo, New York   14202
       (716) 843-5811
       George.C.Burgasser@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
―――――――――――――――――――――――――――

UNITED STATES OF AMERICA,

             v.                           07-CR-193-A

VEDRAN ZAVISIC,

               Defendant.
―――――――――――――――――――――――――――


## CERTIFICATE OF SERVICE


I hereby certify that on September 27, 2013, I electronically filed the foregoing **GOVERNMENT'S REPLY TO DEFENDANT'S RESPONSE TO GOVERNMENTS OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION** with the Clerk of the District Court using its CM/ECF system, which would then electronically notify the following CM/ECF participants on this case:


Timothy W. Hoover, Esq.


                                          S/MADELINE C. MARRONE